IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| KELLIE WARD,[1] )<br>)<br>      Plaintiff, )<br>)<br>v. )<br>)<br>MICHAEL J. ASTRUE, )<br>COMMISSIONER OF THE SOCIAL )<br>SECURITY ADMINISTRATION, )<br>)<br>      Defendant. ) | Case No. CIV-09-1333-D |

## REPORT AND RECOMMENDATION

Plaintiff, Ms. Kellie Ward, seeks judicial review of a denial of disability insurance benefits (DIB) and supplemental security income benefits (SSI) by the Social Security Administration. This matter has been referred for proposed findings and recommendations. *See* 28 U.S.C. § 636(b)(1)(B) and (C). For the reasons set forth below it is recommended that the Commissioner's decision be reversed and remanded for further proceedings consistent with this Report and Recommendation.

**I.** **Procedural Background**

Ms. Ward's alleged disability onset date is January 1, 2008. *See* Administrative Record [Doc. #15] (AR) at 11.[2] The Social Security Administration denied her application

---

[1] Plaintiff's attorney identifies Plaintiff's first name as "Kelli" in the briefs submitted on Plaintiff's behalf. However, both the IFP application signed by Plaintiff as well as the administrative record show her first name is properly spelled "Kellie." In addition, the Court notes that the administrative record also references Plaintiff as Kellie Pappan.

[2] At the administrative hearing, Ms. Ward agreed to amend her onset date from October 21, 2006, to January 1, 2008. AR 11, 26. The decision to amend the onset date was based on the fact that Ms. Ward had engaged in substantial gainful activity through the end of 2007. AR 26.

initially and on reconsideration. AR 41-44. Following a hearing, an Administrative Law Judge (ALJ) issued an unfavorable decision. AR 9-21. The Appeals Council denied Ms. Ward's request for review. AR 1-3. This appeal followed.

## II. The ALJ's Decision

The ALJ followed the five-step sequential evaluation process required by agency regulations. *See Fischer-Ross v. Barnhart*, 431 F.3d 729, 731 (10th Cir. 2005); 20 C.F.R. §§ 404.1520, 416.920. At step one, he determined that Ms. Ward had not engaged in substantial gainful activity since January 1, 2008, the amended alleged onset date. AR 11. At step two, the ALJ determined that Ms. Ward has the following severe impairments: "fibromyalgia; degenerative disc disease, L5-S1 with no significant stenosis; status post injury to right leg, knee, foot; bone spur in left foot." AR 11. At step three, the ALJ found that Ms. Ward's impairments do not meet or medically equal any of the impairments listed at 20 C.F.R. Part 404, Subpart P, Appendix 1. AR 12.

The ALJ next determined Ms. Ward's residual functional capacity (RFC), finding she has the RFC to perform the full range of sedentary work. AR 12. At step four, the ALJ concluded Ms. Ward could not perform her past relevant work as such work was performed at levels greater than the sedentary level. AR 19. At step five, the ALJ determined a significant number of sedentary jobs exist in the regional and national economy that Ms. Ward can perform and, therefore, that Ms. Ward is not disabled. AR 20.

### III. Standard of Review

Judicial review of the Commissioner's final decision is limited to determining whether the factual findings are supported by substantial evidence in the record as a whole and whether the correct legal standards were applied. *See Poppa v. Astrue*, 569 F.3d 1167, 1169 (10th Cir. 2009). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Doyal v. Barnhart*, 331 F.3d 758, 760 (10th Cir. 2003) (quotation omitted). A decision is not based on substantial evidence if it is overwhelmed by other evidence in the record or if there is a mere scintilla of evidence supporting it. *Branum v. Barnhart*, 385 F.3d 1268, 1270 (10th Cir. 2004). The court "meticulously examine[s] the record as a whole, including anything that may undercut or detract from the [administrative law judge's] findings in order to determine if the substantiality test has been met." *Wall v Astrue*, 561 F.3d 1048, 1052 (10th Cir. 2009) (citations omitted). While the court considers whether the ALJ followed the applicable rules of law in weighing particular types of evidence in disability cases, the court does not reweigh the evidence or substitute its own judgment for that of the Commissioner. *Bowman v. Astrue*, 511 F.3d 1270, 1272 (10th Cir. 2008) (quotations and citations omitted).

### IV. Issues Raised on Appeal

Ms. Ward brings two claims on appeal. First, Ms. Ward claims the ALJ erred when he determined her fibromyalgia is not disabling. As part of this claim, Ms. Ward contends the ALJ wrongfully discounted the diagnosis of fibromyalgia by Ms. Ward's treating physician. Second, Ms. Ward claims the ALJ's step five finding is erroneous because it is

not supported by vocational expert testimony and is impermissibly based on application of the grids.

V.   **Analysis**

   A.   **The ALJ's Analysis Regarding Ms. Ward's Fibromyalgia**

At step two, the ALJ determined Ms. Ward's severe impairments include fibromyalgia. AR 11. The ALJ, therefore, was required to consider Ms. Ward's fibromyalgia when determining her RFC. *See* 20 C.F.R. §§ 404.1545(a)(2), 416.945(a)(2) (requiring that *all* medically determinable impairments be considered when assessing RFC); *see also* 20 C.F.R. § 1523 ("If we do find a medically severe combination of impairments, the combined impact of the impairments will be considered throughout the disability determination process.").

Ms. Ward claims the ALJ erred by not giving controlling weight to the opinion of her treating physician, Dr. Garland.[3] Ms. Ward claims the ALJ required an improper burden of proof with respect to Dr. Garland's diagnosis of fibromyalgia. Ms. Ward specifically challenges the following finding made by the ALJ:

> It appears that Dr. Garland's diagnosis of Fibromyalgia contained in Exhibit 5F is mostly supported by claimant's subjective complaints. The medical records contain little to no objective evidence, including the lack of documentation regarding including pain in eleven (11) of eighteen (18) tender point sites on digital palpation. Furthermore, Dr. Garland provided the claimant with "return to work" authorization dated February 12, 2007, after his

---

[3]In determining Ms. Ward's RFC, the ALJ stated he was giving "substantial, but not controlling weight, to the opinions of Dr. Garland contained in Exhibit 5F." *See* AR 15; *see also* AR 215-241 (Exhibit 5F).

> original fibromyalgia diagnosis. Therefore the unsigned [sic] affords substantial, but not controlling weight, to the opinions of Dr. Garland contained in Exhibit 5F.

AR 15.

For several reasons, the ALJ's reliance on a "lack of documentation" regarding tender point sites is erroneous. First, the ALJ already determined that Ms. Ward's fibromyalgia was a severe impairment at step two. Therefore, to the extent the ALJ rejected the diagnosis of fibromyalgia by Dr. Garland for purposes of his RFC determination, such rejection is inconsistent with the step two finding. Second, the record is not entirely clear as to Dr. Garland's tender point site findings. For example, on examination in December 2006, when diagnosing fibromyalgia, Dr. Garland notes "multiple trigger points = thighs, calfs, [sic] back, upper arms." AR 222. It is not clear from this notation the number of Ms. Ward's tender point sites.[4] Third, the Tenth Circuit has recognized that it is erroneous for the ALJ to require objective evidence in support of a diagnosis of fibromyalgia. *See Gilbert v. Astrue*,

---

[4] As the ALJ noted, in 1990, the American College of Rheumatology (ACR) established criteria for classification of fibromyalgia. AR 15. "Generally, the ACR proposed the classification of fibromyalgia based upon widespread pain with tenderness at 11 or more of the 18 specific tender point sites." *Waters v. Astrue*, No. 2:09 CV 28 DDN, 2010 WL 2522702 at *9 n. 10 (E.D. Mo. June 16, 2010) (unpublished op) (*citing* http://www.rheumatology.org/practice/clinical fibromyalgia/1990_Criteria_for_Classification_Fibro.pdf). *See also Brown v. Barnhart*, 182 Fed. Appx. 771, 773 n. 1 (10th Cir. May 25, 2006) (unpublished op.) ("Clinical signs and symptoms supporting a diagnosis of fibromyalgia under the American College of Rheumatology Guidelines include primarily widespread pain in all four quadrants of the body and at least 11 of the 18 specified tender points on the body.") (citation omitted). However, in May 2010, the ACR published new diagnostic criteria which "broadened substantially the important factors . . . to consider in clinically diagnosing fibromyalgia. *Id*. (*citing* http://www.rheumatology.org/practice/clinical/classification/fibromyalgia/2010_preliminary_diagnostic_criteria.pdf ).

231 Fed. Appx. 778, 784 (10th Cir. April 11, 2007) (unpublished op.) ("While it was appropriate for the ALJ to assess the objective findings with respect to Ms. Gilbert's individual joints when considering her claims of disability based on arthritis and disc disease, the lack of objective test findings noted by the ALJ is not determinative of the severity of her fibromyalgia.") (*citing Sarchet v. Chater*, 78 F.3d 305, 306 (7th Cir. 1996); *Green-Younger v. Barnhart*, 335 F.3d 99, 108 (2d Cir.2003) (reversing where ALJ failed to give controlling weight to treating physician opinion of disability based on fibromyalgia and "effectively required 'objective' evidence for a disease that eludes such measurement")); *see also Brown v. Barnhart*, 182 Fed. Appx. 771, 773 (10th Cir. May 25, 2006) (unpublished op.) (recognizing that "[w]hat makes fibromyalgia difficult to analyze in the social security disability context is the lack of objective symptoms"); *Moore v. Barnhart*, 114 Fed. Appx. 983, 992 (10th Cir. Nov. 19, 2004) (unpublished op.) (accord). For all these reasons, therefore, the ALJ's basis for giving less than controlling weight to the diagnosis of fibromyalgia by Dr. Garland is erroneous both factually and legally.[5]

However, Dr. Garland's medical records contain no functional limitation analysis. Therefore, whether the ALJ's erroneous treatment of Dr. Garland's medical opinion

---

[5]The ALJ also relied on a "return to work" authorization from Dr. Garland as reason to discount the diagnosis of fibromyalgia. However, the record shows the return to work was for a brief period of treatment from January 8, 2007 to January 10, 2007. AR 240. The record shows Dr. Garland treated Ms. Ward for bronchitis during this time period. AR 221. Moreover, Ms. Ward was still working in January 2007, her onset date occurring nearly one year later in January 2008. For these reasons, Dr. Garland's "return to work" is not probative of any limitations caused by Ms. Ward's fibromyalgia.

regarding the diagnosis of fibromyalgia requires a remand is dependent on the ALJ's treatment of other evidence to support his RFC determination.

As set forth, the ALJ determined Ms. Ward could perform the full range of sedentary work. The ALJ stated he was giving "great weight" to the opinion of Dr. Burk, a treating physician Ms. Ward saw for pain and symptoms in her right foot. AR 16. On April 10, 2008, Dr. Burk opined that Ms. Ward must "limit her duties in the work force to sitting." AR 478. He further opined:

> Inasmuch as one half of every hour would be limited in her ability to work on her feet and as a result of having her work functions limited to desk type jobs, I would rate her disability at 50% from the normal working person.

AR 478. The ALJ concluded that "Dr. Burk's medical findings would limit the claimant to a sedentary functional capacity. . . ." AR 16. Although Dr. Burk's opinion arguably may support the ALJ's RFC determination, the problem with that opinion is that it is limited to exertional limitations caused by Ms. Ward's "chronic pain in her right foot." AR 478. Dr. Burk's opinion does not take into consideration the combination of Ms. Ward's impairments and specifically, any exertional limitations associated with fibromyalgia. *See Salazar v. Barnhart*, 468 F.3d 615, 621 (10th Cir. 2006) ( "[A]n ALJ is required to consider all of the claimant's medically determinable impairments, singly and in combination; the statute and regulations require nothing less" and a failure to do so "is reversible error").

The ALJ further stated he was giving "minimal weight" to the opinion of Phil Green, a physician's assistant (PA) "due to the lack of objective evidence and his status as an unacceptable medical source." AR 18. The record shows Ms. Ward received treatment from

7

Dr. Samuel Hague for the time period January 2002 through March 26, 2008, and that throughout much of this period Phil Green rendered medical treatment under Dr. Hague's supervision. AR 339-477. In addition to providing general medical care, Ms. Ward saw Green for treatment of her fibromyalgia and degenerative disc disease. *Id*.

On March 26, 2008, Green opined that Ms. Ward can frequently lift up to 10 pounds and frequently carry up to 10 pounds but that she could never lift or carry more than 10 pounds. He found she can sit for 5 hours at one time, but that she could sit for a total of 4 hours during an 8-hour day. He further found she could stand for only 1 hour of an 8-hour day and walk for only 1 hour of an 8-hour day. AR 475. He also found she was limited in the use of her feet for repetitive movements. He found she could occasionally bend, squat and climb, frequently reach, but never crawl. AR 476. He cited degenerative disc disease and fibromyalgia as the medical findings supporting his RFC evaluation. *Id*. Mr. Green's RFC evaluation appears to preclude sedentary work.[6]

The ALJ gave "minimal weight" to Mr. Green's opinion "due to the lack of objective evidence and his status as an unacceptable medical source." AR 18. As set forth above, with respect to Ms. Ward's fibromyalgia, the lack of objective evidence is not valid grounds upon which to reject the opinion. And, as the ALJ acknowledged, while a PA's opinion is not entitled to controlling weight, *see* 20 C.F.R. §§ 404.1513(a), 416.913(a), the ALJ should use a PA's medical observations to assist him in determining the severity of a claimant's

---

[6]Sedentary work requires lifting no more than ten pounds, standing or walking no more than 2 hours, and sitting approximately 6 hours in an 8-hour work day. *See* SSR 83-10, 1983 WL 31251.

impairments and how they affect her ability to work, *see* §§ 404.1513(d), 416.913(d) (allowing consideration of other medical-source evidence and defining "other sources" to include physicians' assistants). On the present record, the ALJ's reasons for discounting Mr. Green's opinion are legally flawed and not supported by substantial evidence.[7]

The only other RFC assessments in the record are those of the non-examining agency physicians. The ALJ made the following statement regarding the opinions of these physicians:

> The residual functional capacity conclusions reached by the physicians employed by the State Disability Determination Services also supported a finding of 'not disabled.' Although those physicians were non-examining, and therefore their opinions do not as a general matter deserve as much weight as those of examining or treating physicians, those opinions do deserve some weight, particularly in a case like this in which there exist a number of other reasons to reach similar conclusions (as explained throughout this decision).

AR 19. As the ALJ found, the two RFC assessments by the agency physicians both support a finding that Ms. Ward can perform sedentary work. Yet, the assessments contain

---

[7] The regulations state that "[u]nless we give a treating source's opinion controlling weight under paragraph (d)(2) of this section, we consider all of the following factors in deciding the weight we give to *any* medical opinion." 20 C.F.R. §§ 404.1527(d), 416.927(d) (emphasis added). Those factors are: (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (3) the degree to which the physician's opinion is supported by relevant evidence; (4) consistency between the opinion and the record as a whole; (5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (6) other factors brought to the ALJ's attention which tend to support or contradict the opinion. *See Watkins v. Barnhart*, 385 F.3d 1297, 1301 (quotation omitted). *See also* 20 C.F.R. §§ 404.1527(d)(2)-(6); 416.927(d)(2)-(6).
   Even though Phil Green's opinion could not be given controlling weight, the opinion is a medical source opinion entitled to some consideration, and the ALJ should have analyzed the factors listed above in determining the weight to be afforded the opinion.

9

considerably different findings regarding Ms. Ward's functional limitations. The different findings are significant given the fact that the assessments were made within approximately six weeks of one another.

Dr. Thurma Fiegel opined on March 10, 2008, that Ms. Ward "is a 41 [year-old] female w[ith] allegation of fibromyalgia." AR 303. Dr. Fiegel further notes that blood tests contain results "indicative of fibromyalgia." AR 304. But Dr. Fiegel never acknowledges an actual diagnosis of fibromyalgia. It appears, therefore, that Dr. Fiegel did not base her RFC assessment on any medical diagnosis of fibromyalgia.

Dr. Fiegel opined Ms. Ward could occasionally lift or carry 50 pounds, frequently lift and/or carry 25 pounds, stand and/or walk about 6 hours in an 8-hour work day, sit about 6 hours in an 8-hour work day and had an unlimited ability to push and/or pull. AR 303.

Dr. Luther Woodcock opined on April 30, 2008, that Ms. Ward both "alleges fibromyalgia" and "appear[s] to be positive for fibromyalgia." AR 532. In contrast to Dr. Fiegel's assessment, Dr. Woodcock determined Ms. Ward could occasionally lift and/or carry only 10 pounds, frequently lift and/or carry less than 10 pounds, stand and/or walk 2 to 3 hours in an 8-hour work day, sit about 6 hours in an 8-hour work day and had an unlimited ability to push and/or pull. AR 532, 533.

It is not clear from the record that Ms. Ward's diagnosis of fibromyalgia was properly considered as part of the non-examining physicians' RFC assessments. Both doctors emphasized Ms. Ward's "allegations" of fibromyalgia, and both appear to have given no substantial consideration to the potentially disabling effects of fibromyalgia based on the

sparsity of objective evidence. *See* AR 303-304, 532. Accordingly, these RFC assessments, without more, do not constitute substantial evidence to support the ALJ's RFC determination.

In sum, the ALJ's erroneous treatment of Dr. Garland's diagnosis of fibromyalgia had a ripple effect in his analysis of the other medical evidence of record, the weight he afforded to the various medical opinion evidence, and his RFC determination. Under these circumstances, the ALJ's error requires a remand.

**B.     The ALJ's Step Five Finding**

Ms. Ward further challenges the ALJ's step five finding. At step five, the ALJ used the Medical-Vocational Guidelines, 20 C.F.R. Part 404, Subpt. P, App. 2 ("grids") to conclude that Ms. Ward was not disabled. AR 20. Ms. Ward claims the ALJ erred because he "did not pose any specific exertional or non-exertional limitations of the Plaintiff in a hypothetical examination of the vocational expert (VE)." *See* Plaintiff's Opening Brief [Doc. #17] at 15.

As set forth, the ALJ determined Ms. Ward had the RFC to perform the full range of sedentary work. "When a claimant's exertional level, age, education, and skill level (i.e., work experience) fit precisely within the criteria of a grid rule, an ALJ may base a determination of nondisability conclusively on the grids." *Haddock v. Apfel*, 196 F.3d 1084, 1088 (10th Cir. 1999). Therefore, if the ALJ's RFC determination were supported by substantial evidence, it was proper for the ALJ to rely on the grids to find Ms. Ward not disabled. *Id*.

But the Court has determined a remand is required for proper evaluation of the diagnosis of fibromyalgia by Ms. Ward's treating physician. And, on remand, the ALJ's evaluation of this evidence may alter his RFC determination. Consequently, the Court need not further address Ms. Ward's second claim for relief. For remand purposes, the Court notes that application of the grids is not appropriate where exertional limitations do not fit precisely within the criteria of a grid rule. *Haddock*, 196 F.3d at 1088.

C. **Request for Immediate Award of Benefits**

Ms. Ward requests a remand or, in the alternative, an immediate award of benefits. Ms. Ward's request for an immediate award of benefits should be denied.

Under sentence four of the statute granting judicial review of the Commissioner's final decisions, 42 U.S.C. § 405(g), this Court has authority to enter a judgment affirming, modifying, or reversing the Commissioner with or without remanding the cause for rehearing. 42 U.S.C. § 405(g). "When a decision of the [Social Security Administration (SSA) ] is reversed on appeal, it is within this court's discretion to remand either for further administrative proceedings or for an immediate award of benefits." *Ragland v. Shalala*, 992 F.2d 1056, 1060 (10th Cir. 1993). "Outright reversal and remand for immediate award of benefits is appropriate when additional fact finding would serve no useful purpose." *Williams v. Bowen*, 844 F.2d 748, 760 (10th Cir. 1988) (*quoting Dollar v. Bowen*, 821 F.2d 530, 534 (10th Cir. 1987)).

12

As set forth above, additional fact finding and proper analysis of Ms. Ward's diagnosis of fibromyalgia is necessary. A remand, therefore, would serve a useful purpose and Ms. Ward's request for an immediate award of benefits should be denied.

## RECOMMENDATION

It is recommended that the Commissioner's decision be reversed and remanded for further consideration consistent with this Report and Recommendation.

## NOTICE OF RIGHT TO OBJECT

The parties are advised of their right to file specific written objections to this Report and Recommendation. *See* 28 U.S.C. § 636 and Fed.R.Civ.P.72. Any such objections should be filed with the Clerk of the District Court by September 21st, 2010. The parties are further advised that failure to make timely objection to this Report and Recommendation waives the right to appellate review of the factual and legal issues addressed herein. *Moore v. United States*, 950 F.2d 656 (10th Cir. 1991).

## STATUS OF REFERRAL

This Report and Recommendation terminates the referral by the District Judge in this matter.

ENTERED this 31st day of August, 2010.

VALERIE K. COUCH
UNITED STATES MAGISTRATE JUDGE